

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY FLORIDA

STATE OF FLORIDA, ex rel,
ZOLTAN BARATI,

    Plaintiffs,

v.

MOTOROLA, INC., A Foreign
For Profit Corporation, and
MORPHOTRAK, INC., A Foreign
For Profit Corporation,

    Defendants.

Case No.:

*QUI TAM* ACTION
FILED UNDER SEAL

_____/

## COMPLAINT SEEKING DAMAGES AND OTHER RELIEF UNDER THE *QUI TAM* PROVISIONS OF THE FLORIDA FALSE CLAIMS ACT

COMES NOW, the STATE OF FLORIDA, *ex rel* ZOLTAN BARATI (herein also referred to as "State of Florida," "Florida" or "Plaintiff"), and ZOLTAN BARATI, both individually and on behalf of the State of Florida (herein also referred to as "Mr. Barati," "Plaintiff," or "Relator"), through the undersigned counsel and sues MOTOROLA, INC., (herein also referred to as "Motorola" or "Defendant") and MORPHOTRAK, INC., pursuant to Sections 68.081-68.092, Florida Statutes (2009), also known as the Florida False Claims Act (herein also

referred to as "False Claims Act" or "Act" or "FCA"), to recover treble damages, civil penalties, attorneys' fees and costs of litigation and, pursuant to Section 112.3187, Fla. Stat. (Florida Whistleblowers' Act) and Sections 448.101-105, Fla. Stat., for wrongful retaliation regarding his position of employment, and to recover damages, attorneys' fees and costs of litigation, and such other relief as the Court may deem just and appropriate under the circumstances, and states:

## I. INTRODUCTION

1. On or about December 28, 2007, Motorola, Inc., entered into a $7,400,000.00 contract with the Florida Department of Law Enforcement (herein also referred to as "FDLE"), to upgrade and/or replace FDLE's existing Motorola Printrak™ Series 2000 "Automated Fingerprint Identification System" (AFIS) with a Motorola Printrak™ Biometrics Identification Solution (BIS) "Automated Fingerprint Identification System," intended to significantly improve FDLE's biometric fingerprint matching, processing, storage and interface capabilities with other local, state and national law enforcement agencies (herein also referred to as the "Contract" or "AFIS Contract").

2. The December 28, 2007, AFIS Contract set forth certain performance standards required of the Motorola Printrak™ (BIS) "Automated Fingerprint Identification System," and required specific testing be conducted to ensure the

capabilities of the Motorola Printrak™ (BIS) system met or exceeded the requirements of the said Contract.

3. Per the terms of the AFIS Contract, upon successful completion of certain project milestones, including the completion of certain required tests demonstrating the system's ability to meet the Contract's requirements, Defendant Motorola was entitled to submit a claim to FDLE for payment of a designated portion of the $7,400,000.00 AFIS Contract price.

4. As set forth in Count I of this *qui tam* Complaint, Defendant Motorola submitted fraudulent claims for payment to FDLE based upon false representations regarding its alleged successful completion of various material requirements of the AFIS Contract. At the time Defendant Motorola submitted its false claims for payment to FDLE, Defendant Motorola was well aware it had not successfully completed the material requirements of the Contract milestone(s) for which it was seeking payment and was not entitled to the payment(s) it subsequently received from the State of Florida.

5. As alleged in Counts II and III of this *qui tam* Complaint, Relator Zoltan Barati made known to Defendant Motorola his objections to the Biometrics Unit's fraudulent practices, including those relating to the AFIS Contract. In

retaliation, Defendant Motorola, Inc. subjected Relator Zoltan Barati to thinly disguised and increasingly adverse employment actions.

6. With full knowledge that material requirements of the AFIS Contract remained unmet, (because its failure to adhere to SEI quality assurance procedures and other misrepresentations) and despite the ongoing work of personnel from the Biometrics Unit, Defendant Motorola, Inc. sold its Biometrics Unit to Defendant MorphoTrak, Inc.

7. Defendant MorphoTrak, Inc. rejected Relator Zoltan Barati's attempts to communicate his concerns regarding the Biometrics Unit's fraudulent practices, including those relating to the AFIS Contract, and instead Defendant MorphoTrak, Inc. elected to adopt the ongoing course of thinly disguised and increasingly hostile retaliation being imposed against Relator Zoltan Barati by the Biometrics Unit's management/former Defendant Motorola employees.

8. By letter dated April 21, 2009, memorializing the false allegations and petty assertions of the Biometrics Unit's management/former Defendant Motorola employees, Defendant MorphoTrak, Inc. terminated Relator Zoltan Barati's employment and thereby completed the ongoing course of thinly disguised, unjustified and unlawful retaliation against Relator Zoltan Barati adopted from Defendant Motorola.

## II. JURISDICTION AND VENUE

9. Many of the acts proscribed by Sections 68.081 - 68.092, Florida Statutes (2009), and complained of herein, along with the negotiations between FDLE and Defendant Motorola, Inc., resulting in their Contract of December 28, 2007, occurred in Tallahassee, Leon County, Florida.

10. Moreover, in as much as this lawsuit is brought pursuant to Florida's False Claims Act, alleging Defendant Motorola submitted, or caused to be submitted, false claims to FDLE, an agency of the State Of Florida, for which Defendant Motorola fraudulently obtained payments, the Second Judicial Circuit, in and for Leon County, Florida is the appropriate jurisdiction and venue for this action as provided Section 68.083(3), Florida Statutes (2009).

## III. PARTIES

A. **Plaintiffs**

11. The Florida Department of Law Enforcement (FDLE) is an agency of the State of Florida and functions as Florida's premier law enforcement organization. In addition to providing a force of sworn law enforcement officers having state-wide jurisdiction, and providing forensic laboratory services to law enforcement agencies throughout the State of Florida, FDLE also functions as

Florida's repository for criminal records, including individual criminal histories and fingerprint/palmprint records.

12. Until his employment was terminated on April 22, 2009, Relator Zoltan Barati was a Principal Staff Software Engineer, employed by Defendant Motorola, Inc. and assigned to its Biometrics Unit located in Anaheim, California. Including Relator Zoltan Barati's period of employment with the firm from which Defendant Motorola acquired its Anaheim based Biometrics Unit, Relator Zoltan Barati was employed as a software engineer developing biometric identification products at the Anaheim facility for more than thirteen consecutive years. During much of his 13-year period of employment as a software engineer developing biometric identification systems, Relator Zoltan Barati was involved in the ongoing development of Defendant Motorola's Printrak™ (BIS) Automated Fingerprint Identification System, as well as other fingerprint identification products, and was familiar with the Motorola Printrak™ (BIS) Version 10x (10.0 and 10.1) software, as contemplated in the Motorola/FDLE AFIS Contract.

**B.   Defendants**

13. Defendant Motorola, Inc. is a foreign for-profit corporation with its corporate headquarters located in Schaumburg, Illinois. As a global corporation, Defendant Motorola, Inc. develops, manufactures, markets, and distributes

throughout the world, high-tech goods and services having civilian, military and commercial applications.

14. During much of the time relevant to this Complaint, Defendant Motorola, Inc. owned and operated a Biometrics Unit, located in Anaheim, California, primarily engaged in the development, manufacture, distribution and maintenance of "Automated Fingerprint Identification Systems" (AFIS), which Defendant Motorola marketed to large commercial and governmental entities under the unregistered trademark "Printrak™."

15. On or about April 6, 2009, after a considerable period of negotiations, Defendant Motorola, Inc. completed the agreement to sell its Biometrics Unit to a wholly owned subsidiary of Sagem Sécurité (herein also referred to as "Sagem"), a French corporation headquartered in Paris, France. Sagem Sécurité merged Defendant Motorola's former Biometrics Unit into Sagem's wholly owned subsidiary, Sagem Morpho, Inc. and changed the said subsidiary's name to MorphoTrak, Inc.

16. Defendant MorphoTrak, Inc., formally known as Sagem Morpho, Inc., is a foreign for-profit corporation and a wholly owned subsidiary of Sagem Sécurité, a French corporation headquartered in Paris, France, belonging to the

Defense Security branch of French Conglomerate Safran, SA, also headquartered in Paris, France.

## IV. STATUTORY AND CONTRACTUAL COMPLIANCE

17. Pursuant to Sections 68.083(2) and 68.083(3), Florida Statutes (2009), this *qui tam* Complaint is being filed under seal, and unless otherwise ordered by a court of competent jurisdiction, shall remain under seal for a period of sixty (60) days, or until such time as the appropriate agency of the State of Florida determines whether or not it intends to intervene in this action. Moreover, it is anticipated this *qui tam* Complaint will not be served on the Defendants until the "Dispute" resolution procedures set forth in Section 11 of the AFIS Contract initially entered into between Defendant Motorola, Inc. and FDLE on December 28, 2007, have been addressed as may be appropriate under the circumstances.

18. Pursuant to Section 68.083(3), Fla. Stat. (2009), the State of Florida, acting through the Attorney General's Department of Legal Affairs, may elect to intervene and proceed with this action within a period of sixty (60) days after receiving a copy of this *qui tam* Complaint and the Relator's Disclosure Statement. Should the Florida Attorney General deem it appropriate to do so, the Department of Legal Affairs may intervene in this action by proceeding with the "Dispute" resolution process set forth in Section 11 of the AFIS Contract.

19. The Relator has provided the Florida Attorney General, as head of the Department of Legal Affairs, and the Chief Financial Officer, as the head of the Department of Financial Services, a copy of this *qui tam* Complaint along with his Disclosure Statement setting forth material information supporting the Relator's assertions in this *qui tam* Complaint, as provided in Section 68.083(3), Fla. Stat. (2009).

## V. GENERAL ALLEGATIONS

**A. Background**

20. Following the events of September 11, 2001, national security concerns dictated that law enforcement agencies throughout the nation conform to uniform standards regarding the manner in which criminal records, including electronic digital fingerprint records, are created and maintained. The Federal Bureau of Investigation was one of the organizations tasked with a leading role in developing these uniform law enforcement standards.

21. More than anything else, advances in biometric technology permitting an individual's unique fingerprints and palm prints to be accurately recorded, stored, retrieved, reviewed, and transferred in an electronic digital format, was the driving force regarding the nationwide effort to implement uniform standards to be

followed by law enforcement agencies maintaining fingerprint files and other criminal records.

22. Sometime on or before 2003, Defendant Motorola, as a subcontractor, delivered components of its Printrak™ Series 2000 AFIS system to a prime contractor/system integrator responsible for developing FDLE's multi-phased FALCON project. Defendant Motorola's Printrak™ Series 2000 AFIS system consisted of Advanced Matching Service (AMS) and Data Processing Services (DPS) as well as "lite" versions of Advanced Data Storage (ADS) and Data Exchange Services (DES), for integration within an overall Service Oriented Architecture (SOA).

23. As the law enforcement agency tasked with maintaining Florida's statewide criminal records and "Automated Fingerprint Identification System," FDLE determined sometime during the latter part of 2006 or the early part of 2007 that certain aspects of Florida's criminal records storage, search and retrieval system were technologically outdated, and embarked upon a "Biometric Workflow Replacement" effort to improve the system's accuracy, processing speed and interoperability, and to expand its electronic digital storage capacity.

24. On December 28, 2007, FDLE and Defendant Motorola, Inc. entered into a contract wherein Defendant Motorola, Inc. agreed to provide the services